Our first case for this morning is Restoration Risk Retention v. Gutierrez Mr. Blair Good morning, Your Honor, and may it please the Court. My name is Kevin Blair. I am counsel for the Appellant Restoration Risk Retention Group, Inc., which filed this suit because Appellee's recent reinterpretation of Wisconsin Statute 101.6542A belies the plain language of that provision and discriminates against RRGs in violation of the Liability Risk Retention Act of 1986. I think it would be helpful to the Court if you were to begin with the jurisdictional and mootness issues we suggested you look at. Yes, Your Honor. The first question in the Court's order on Friday asked about the finality of the lower court's ruling. Appellant contends that the December 5, 2016, judgment was a proper partial final judgment entered pursuant to 54B, but to the extent that Did the district judge enter a 54B certification? Yes, Your Honor. The December 5, 2016, order specifically finds that there was no just reason for delay. But you need more than that. What I couldn't tell is what is the distinctive claim that's not interwoven with the rest of the case that's still in the district court that was resolved? You have to say more than there's no just reason for delay. You really have to have a separate claim or you have to completely resolve issues with regard to one party. And I couldn't tell how it met those criteria of 54. Yes, Your Honor. And I understand that that partial final judgment would be subject to abuse of discretion review. And to the extent that this Court would No, actually, we have discretion to decide on 54B. Excuse me, Your Honor. I think we could accelerate this discussion. Appellant is willing to stipulate that the constitutional claims in counts 2 through 7 should be deemed dismissed with prejudice. Okay, that does take care of it. If you're making that stipulation now, then at least we don't have a finality problem. We may have some other problems still to address. So taking them in order, the second question was about diversity jurisdiction. Appellant would also concede that there was not diversity jurisdiction insofar as the director was sued in her official capacity. The third question concerned federal question jurisdiction. And I overheard some clerks talking this morning. Apparently, maybe Your Honors didn't receive a copy of our 28J letter until just this morning. It was on the bench when we came up here. So you can address what you wish, but we have not looked at it. Oh, I apologize for that. We filed that yesterday afternoon in accordance with Circuit Rule 34G so that I could mention the cases. The Shaw v. Delta Airlines, the 1983 Supreme Court decision found that there is 1331 federal question jurisdiction where the plaintiff seeks injunctive relief against a state regulation, arguing that it's preempted by federal law. How is that consistent with the Supreme Court's more recent decisions? For example, Armstrong v. Exceptional Child Center, where the court said you can't enjoin as unconstitutional a state action under the Supremacy Clause, at least not just kind of a naked Supremacy Clause argument. Your Honor, I'm... That was a 2015 Supreme Court decision under the Medicaid Act, a different statute, of course. But the court has, since 1983, tightened up on the ability of a federal court to enjoin a state statute when the only argument you're making is that the Supremacy Clause is implicated. Obviously, in Verizon, you've got the entire Telecommunications Act. Correct, Your Honor, and in that case, Justice Scalia wrote for the court and found that it was irrelevant whether the Federal Telecommunications Act provided a private cause of action. Your Honor, frankly, I'm not prepared to address the Armstrong case today. That's okay. But I'd also note the Illinois Association of Mortgage Bankers case from this court in 2002, where the court found that there was 1331 federal question jurisdiction for where the plaintiffs sought declaratory relief against a state regulation and contend that the agency violated federal law, which is precisely what appellant contends here. The problem is the fact that you're really talking about defense preemption. You don't want to be sued in Wisconsin for violating the Wisconsin insurance regulations. Isn't that the gist of this? And now, so you're turning it around as a declaratory judgment and saying, we want this preemptive judgment. We want this judgment first. I respectfully disagree with the claim in this case is that it's not that we're afraid of being sued. It's that the restoration RRG shareholder insured cannot obtain the necessary certificate to perform their work in Wisconsin. And by design, only members are insured of RRGs. So it's not that we're afraid of being sued. It's that we are being forced to go through all of the same regulations that admitted insurers, licensed insurers in Wisconsin are forced to go through. And that would be state regulation that would be in violation of the preemption in the LORA statute. I thought the problem here was, I guess I've got a little bit different take on it, because you're not the target of the financial responsibility statute. Your potential customers are, right? Members, yes. But your members don't have an incentive to fight this one at a time for you because they've got cheaper alternatives. They can get a bond. They can go to other insurers, right? Correct. And so your problem is you need some sort of judicial relief if you're going to change the status quo, right? Correct. Okay. I don't know if that fully answers the question, but it's a little bit different from some of the other postures in which this problem has arisen. So thanks. Correct. Because, again, by design only shareholder insureds can ‑‑ Restoration RRG can only insure its members, and that's by design under the LORA. And so Restoration RRG cannot do business in Wisconsin if the appellees continue to interpret 101-654-2A the way that they recently have changed to do. Right. So your theory is that state action is being undertaken and that that state action is in violation of a federal statute. Correct, Your Honor. Why isn't this moot? This isn't moot, Your Honor, because the shortest answer, Your Honor, is the footnote 10 in the Alliance case out of the Ninth Circuit explained why various workarounds, potential workarounds, do not cure a discriminatory law. But there's a new law. There are June 2017 amendments to this law, which we certainly aren't going to do anything about. And I guess you've refused to submit any documentation about its application to you. But this new law seems to change quite significantly the regulatory regime in Wisconsin. Your Honor, I don't ‑‑ again, I respectfully disagree that it's significantly changed. The language authorized to do business is still in 101-654-2A, 2A, the only new language. 2B, 2A, 2B, though, says that the applicant has enforced a policy of general liability insurance issued by an insurer that is eligible to provide insurance as a surplus lines insurer in one or more states. And I think RRG fits that description. Yeah, and I would have two responses to that. One, that's exactly the sort of workaround that the court in Alliance said doesn't cure a nondiscriminatory ‑‑ But why? I mean, this is a Wisconsin statute. They certainly weren't looking at this one. I don't see why, you know, if you are now eligible to do business because of this, why doesn't that solve the problem? Because the LORA set up a tripartite system at the federal level preempts all state law that would directly or indirectly regulate risk retention groups. But this says you can do business if you can give the department proof that you've got the surplus lines, you know, insurer in force. So I don't know why you want there to be a problem is what it sounds like. It's not that we want there to be a problem. It's going through extra hoops that we should not have to go through under the LORA. Which hoops under the 2017 law are you objecting to? Showing that we would be eligible to provide surplus lines insurance in one state. Why? I mean, you were already showing them that you're organized in Vermont. Why is that a burden as opposed to going through all of the rigmarole it takes to be a Wisconsin insurance company? Because the former is consistent with the LORA, whereas the latter is a workaround that no other group is required to go through. Do we know what a surplus lines insurer is for purposes of that statute? Is that defined any place in the statute? Not in that statute, Your Honor, that I'm aware of. It's defined elsewhere in the insurance statutes. And you can see that that would cover entities such as the ones we're talking about here today. Are they surplus lines insurance under that definition? Are you asking is my client specifically a surplus lines insurer? Are these entities that we're talking about here today, are they surplus line insurers? As a whole, I believe the answer to that is no. There may be some overlap where some RRGs may qualify under some states' requirements for surplus lines. Well, that's kind of important, really, whether or not the case is moved, right? Right. And my point that I was making before, Your Honor, is that whether RRG could, whether restoration RRG could qualify as a surplus lines in one of the 50 states is irrelevant because that's an extra hoop that they would have to jump through that's not consistent with the LORRA. LORRA preempts all state laws. Then chartering states have the authority to regulate the formation and every operation. So is there a question in the state of Wisconsin as to whether these entities do fall under the surplus lines insurer provision of the new statute? I think, Your Honor, you have to look at each RRG separately. I think Judge Ripple is asking you a simple question. Wisconsin is willing to take you if you're a surplus lines insurer in even one state, in one or more states. So as long as you can point to one state, it looks like you qualify. And even if somebody else didn't qualify, you're not litigating somebody else's case. You're litigating your case. So do you have a dispute? Your Honor, we contend we do have a dispute because that's an extra hoop that we would have to jump through that would be discriminatory. But you've already jumped through it, perhaps, if you're a surplus lines insurer. Well, my second point, Your Honor, was that it actually highlights further that it's discriminatory in that they allow surplus lines, but they're trying to exclude all RRGs. How's that? I don't see that. Well, their new interpretation of 101-654-2A would exclude all RRGs, and they contend that that's proper under the language in Musser that we would contend is dicta. Where did they say that? Where did they say this new June 2017 language excludes all RRGs? They have not said that in their briefs, Your Honor, because the law changed after the briefs were submitted, I believe. They've told us it's moved. But how does that 2017 amendment produce that effect? It looks like it relaxes. It opens new doors for you. It's the same workaround in that we're not permitted to operate in Wisconsin as an RRG only if we can prove that we can operate as a state, and my contention is that that, one, is an improper workaround that doesn't solve the discrimination process, and I think it further shows discrimination in that the state of Wisconsin trusts other states to ensure that surplus lines insurers adequately protect consumers. Let me put something to you and get your reaction to it. We have two very delicate questions of state law in a state-regulated industry here, the one you and the panel have just been talking about, and the antecedent question of whether the commissioner's new interpretation of Wisconsin law is correct or not. Why should this court decide those questions? Why don't we certify this case to the Wisconsin Supreme Court, find out what Wisconsin law is, and then we can proceed with the preemption question? Your Honor, I think that that would be one potential solution, but I think the federal court is the more proper venue to decide whether it's preemptive. Why are we the more proper venue? I mean, you're here only because you raised two constitutional issues, and now you're willing to kiss them goodbye. I mean, this is basically a state matter. Well, Your Honor, we would contend that there's federal question jurisdiction because we're seeking to enjoin a state regulation that's preempted by federal law. I know that's your view. And so a federal court would be the most proper venue to decide. I could reserve, assuming you are correct in your premise, we can reserve the preemption question and just send over the question of the construction of state law to the state court, let them decide it. And depending on how they decide it, there might be a preemption question left over or there might not be. That's correct, Your Honor. The Wisconsin Supreme Court could decide that the new interpretation of 101-654-2A is improper, and then there wouldn't be a preemption issue because it would go back to the interpretation that they had adhered to for over 20 years, which is more in line with the plain language and in harmony with the lore. Then your case just disappears. You're happy, right? You win. Yes. What do you think should count under the federal statute as discrimination? Your Honor, that's an interesting question. The 11th Circuit is the only circuit so far that has held that there has to be some intent to discriminate. We think the 9th Circuit obviously has a better view that there's no indication anywhere in the lore that Congress was only interested in prohibiting facial or intentional discrimination. I'm looking at what this Court said in the ophthalmic mutual case, where obviously Congress gave a lot of attention to this particular carve-out in the legislative history. And I'm trying to understand whether you think there's any provision in the Wisconsin law that singles out RRGs as opposed to just out-of-state insurers for this special treatment for showing professional liability or financial responsibility for housing contractors. Your Honor, I would say that it discriminates against RRGs in that it treats RRGs as any unlicensed insurer. An unlicensed insurer could include insurers that aren't licensed at all or aren't licensed in Wisconsin, but RRGs under the LORA are designed to be regulated under the laws of one state, not 50 different states. And so the whole purpose of the LORA was to increase competition in the insurance industry by preempting state laws that would hinder the multi-state operation of RRGs. Well, okay. Maybe I'm a little slow, but I'm not seeing discrimination against RRGs as a class as distinct from out-of-state insurers. You're right. They're discriminating against all out-of-state insurers, which includes RRGs, which our position is under the LORA, we do not fit within the category of all unlicensed because we are licensed and regulated in Vermont, and there's no dispute that Restoration RRG has done everything to operate legally in Wisconsin and has done so since 2006. Is there any evidence of legislative or regulatory hostility to RRGs as a class? I think the amicus brief pointed out that there is statistical evidence of less RRG activity in Wisconsin as a result of the DICTA and MUSR. Well, you would expect that, but that doesn't amount to discrimination necessarily. But there's not, for example, legislative hearings with people complaining about all these out-of-state RRGs competing with Wisconsin insurers. I'm not aware of any. No, you're on. Okay. Thank you. Your time is up. Thank you very much, Mr. Blair. Mr. Berg. Mr. Berg, I do want to hear from you about jurisdiction, but I'd actually like to start with the theme we were ending on, or at least in part ending on, which is protectionism on the part of Wisconsin. Surely this federal statute, the LLRA, was designed to override to a limited degree state protectionism in the insurance industry and to open it up and almost to be kind of a full faith and credit type of arrangement. And Wisconsin seems to have been perfectly happy with these things for a decade or so, until somebody woke up one day and decided that they weren't going to be okay after all. I don't see any reason for Wisconsin to be able to basically ignore the provisions of the LLRA. Well, Wisconsin is not ignoring the provisions of the LLRA. It preempts most state regulation, but it has a specific exception for financial responsibility laws. But that exception surely doesn't swamp the entire rule. If you said, well, in order to comply with our financial responsibility laws, let's just take your old regime, you have to qualify as a Wisconsin insurer, well, that completely defeats the purpose of the LLRA and seems that Congress would not have written such an exception. Well, so not at all. It's important to keep in mind that the law that we're talking about here is not a regulation of insurers. It's a regulation of building contractors. So it requires building contractors to demonstrate financial responsibility with an insurance policy, and that insurance policy has to come from a licensed insurer. So the only effect this has on risk retention groups is for one narrow type of insurance and only this first sort of narrow type of insurance. So risk retention groups can still provide insurance in any other industry. They can provide it to the same industry above the minimum policy. They just can't provide this one narrow type of insurance. But that's their whole purpose. Their whole business structure is to take people in a particular line of business, pool together, have the members create these funds, basically. So it's as though you're standing here and saying, oh, well, never mind. We're putting them out of business. You're putting this group out of business for Wisconsin,  when the LLRA seems to have a national approach and saying, well, Vermont's regulating them. That's got to be good enough for Wisconsin. Sure. The point of the LLRA was not to allow insurance in the building contractor industry, risk retention groups in that industry. It was designed to improve competition in the insurance market, which I have to say is kind of a throwback compared to most markets in the United States. Sure. So the point was to allow risk retention groups generally. But Congress thought in certain industries, states have an interest in ensuring that service providers are financially stable, and so they allowed exceptions for those industries. This is one of those industries where the state has determined that it's important for contractors to remain financially healthy. There's a specific exception in federal law that says states are allowed to have financial responsibility laws. That's exactly what this law is, and it mirrors the language in the federal exception. But you're reading it as though it can be a global. The actual language says states may require an RRG to submit proof of financial responsibility as a condition for conducting certain activities, and in so doing, to include or exclude, and then it goes on, a risk retention group. So that sounds to me like it needs to be a specific finding. I mean, it could be that some risk retention group is not financially sound, and many other risk retention groups are. It doesn't look to me like something that allows you to say we're not doing RRGs in the building industry or in the health care industry or in whatever. So the fact that the specific exception uses singular nouns shouldn't have any weight, and the reason is that the LRRA uses singular nouns everywhere. So the preemption provision itself says that states can't regulate or make unlawful a singular risk retention group. But the broader reason to read a as though it means a, it means an individual one, is my first point that your reading of the exception erases the whole statute for certain sectors, and where do we get this guidance from Congress? It doesn't erase the whole act. It erases it in a specific industry in a specific state. That's exactly what Congress wanted to authorize. Where do you get that from? From the exception itself. It says that for particular industries, states are allowed to require financial responsibility, and they can exclude risk retention groups. A risk retention group, not all risk retention groups. Sure, but that means the reason it was written in the singular form is because these laws, financial responsibility laws, are typically written that way. Every single law in every one of the cases that we've cited is written exactly that way. They require an insurance policy from a specific insurer, and so when Congress was thinking about those laws, it naturally wrote the exception to mirror the way that those laws are written. But doesn't it make sense to think that if Wisconsin wants to say we want proof of financial responsibility, some amount of assets or something, maybe some groups will comply and others won't. But why even have an LLRA if you're not going to make it possible to comply? Because you have all of the remaining industries. We're talking about one narrow industry. No, we're actually talking about two. Well, health care, liability insurance. I mean, Wisconsin could multiply this on out to every industry. You've offered no limiting principle here. If that happened, I think you could have a different claim. You could have some sort of purpose intentional discrimination claim with evidence that Wisconsin has cut out every single industry. But what Congress wanted to allow is they wanted to allow states in particular industries to require financial responsibility, and that's what Wisconsin has done in this case in one narrow particular industry. Risk retention groups, this risk retention group, can still provide insurance to building contractors. It just can't provide. Well, in other states, I mean, that's not. No, even in Wisconsin it can still provide insurance to building contractors, just not sort of the minimum level of insurance that they need to establish financial responsibility. But if they wanted extra insurance above that level, they could provide it easily. So I think it clearly fits within the exception. But that's what this court held in Musser, so you'd have to overrule Musser. Well, Musser is a problematic decision, and this was not much of a considered holding in Musser. I disagree. It agrees with Mears. So both the Eleventh Circuit and this circuit have held that these types of laws are allowed. The only case that has gone the other way is the Ninth Circuit's opinion, and I think the reasoning is very flawed primarily because it relies primarily on the singular noun aspect. And as I've explained, I think you shouldn't put any weight on that. There's a broader policy of encouraging competition in this industry. I wouldn't say people are seizing on what does is mean or what does a mean. Let me ask you this question, somewhat different angle. Is it your position that RRG itself qualifies as a surplus lines insurer in one or more states, pursuant to the June 2017 amendments? So our position is that almost certainly they do, but I don't know for sure because they have the information that I would need to decide that question. So let me back up and explain. Surplus lines insurance is essentially any insurance placed with an unlicensed insurer. So states regulate typical insurance policies like automobile homeowners and the like, but don't regulate obscure forms like if you wanted to insure a racehorse or something. And so they allow unlicensed insurers to provide those rare types of insurance since there's not usually an in-state market. They have some basic eligibility requirements for surplus lines insurance. So Wisconsin's requirements are you have to be domiciled somewhere, you have to be authorized there, and you have to have some basic capital requirements. We know that they meet one and two because those are also basic requirements to be a risk retention group, but we don't know whether they meet the capital requirement. Is the capital requirement stated in terms of an amount of money? Yes, the default is $15 million, but it can go down to as low as 4.5, I think, if the commissioner approves it. Do we know what the requirements are in the state of Vermont? No, I don't know what the surplus lines requirements are in the state of Vermont. Would that be found in Vermont statutes that we could consult? Possibly, yes. So it may be that you do have enough information. Yeah, I didn't look up Vermont statutes. The important point is even if they didn't meet Wisconsin's surplus lines requirements, they could meet any state in the country. So pick the laxest state, the most permissive state, and just show that you meet those surplus lines requirements. So that's why I say it's almost certain that they meet some state in the country's surplus lines requirements, but I don't know for sure. So when the law changed, I called them up and said, congrats, you win the case, the law changed, there's a new provision, all you've got to do is pick a state and show us the one you qualify under, and they said, no thanks, right? They thought that was too burdensome, they said. Right. So here's the puzzle. If we knew for sure that they meet subsection B, the new requirement, then the case is definitely moot because they can get what they want and they ask for only prospective relief. If, and there's a small possibility, that they don't meet any state's surplus lines requirements, then the case is definitely not moot because they might still win if they win one of their arguments under A. Does states keep lists, I mean, does Wisconsin, for example, keep a list of companies that somebody could check on a website or somewhere of companies in Wisconsin that meet its surplus lines requirements? Not that I'm aware of. I looked for that, but I couldn't find it, no. So not that I'm aware of. So that this would just be lodged in the internal records of any given RRG or company or whatever it was. Right, right. So that's the mootness puzzle. I look for ways that this court has dealt with a situation like that where the other side has the information about whether the case is moot and I couldn't find any. The best solution that I could come up with, and there might be problems with this, would be for this court to order restorationists to explain why it can't simply qualify under B. If it has a good explanation, move on to decide the merits. If it doesn't, hold that it failed to meet its burden to establish standing. It seems to me that takes us back to the jurisdictional question, though. If I were satisfied that we had jurisdiction, and they've waived diversity, I think, wisely, and we're not talking about 54B anymore, we have a final judgment, that would be just appellate jurisdiction anyway. We're in the world of federal question jurisdiction. If I thought we had federal question jurisdiction, the kinds of things you're talking about seem to me to be the kinds of things the district court is much better situated to do, and a remand to the district court for purposes of exploring the mootness question rather than have this court suddenly become a finder of fact about what's going on with mootness just strikes me as not our usual role. Certainly. That's another option would be to remand to the district court. I came to the same conclusion as opposing counsel on the federal question jurisdiction question. I think there is certainly federal question jurisdiction here. I want to address Armstrong, which you raised earlier. So the issue in Armstrong was the source of the right, and the court rejected the idea that the source comes from the supremacy clause, but the court held that federal courts have inherent equitable authority to decide and enjoin preempted state law. So let me read a quote from Armstrong. They said, as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted. And it cites Ex Parte Young, which is what Shaw v. Delta Airlines cited, which is what Verizon Maryland cited. So I think even Armstrong reaffirmed the general principle that the court has equitable power to enjoin preempted laws. I want to talk sort of briefly about Hamilton's question or suggestion that this is not a preemption defense. There actually isn't any possible way that I could think of that they could have raised the argument as a preemption defense because they're not even involved. Since the law is a regulation of building contractors, the state denied a request from a particular building contractor. Restoration risk wasn't even involved in that action, so it couldn't have raised it. The contractor was just seeking a license more or less? Just seeking a certification. And it had to show the insurance. It had to show financial responsibility using an insurance policy, right. So restoration risk wasn't involved in that. After it was denied, now it wanted to raise its preemption claim. The only way it could do it is to file an action, which is more of an affirmative claim than a defense. In a sense, it's an action for permission to do business in Wisconsin, it sounds like. It's an action. Saying federal law gives it a right to do business in Wisconsin by virtue of its Vermont charter. Yeah, it's an action to hold that the state's interpretation is preempted, which in Shaw, in Verizon Maryland, in Illinois Association of Mortgage Brokers, all these courts have held repeatedly that federal courts have federal question jurisdiction to decide that sort of question exactly. So we think there's definitely federal question jurisdiction, but there's a significant mootness problem. As I've suggested, this court could order them to explain why it's not moot and dismiss it on the grounds that they haven't met their burden to establish standing. This court does that regularly. Or if it wished, it could remand to the district court for a finding about mootness. Is the district court going to be able to handle that question without resolving these issues of Wisconsin law that Judge Ripple was talking about? Are we just going to move from one morass to another? Well, I think the district court would do the same thing that I'm suggesting this court would do, which would be to say the change in the law triggers restoration risk, your burden to show us that you have an injury in fact. So show the court that you can't just meet B. And if they can make that showing, great, we can move on to the merits. If they can't, then the case is moot. That's why I suggested that this court could issue that order so we don't have to ping-pong back and forth. But if you want to remand, that's fine as well. On the merits, the state's interpretation of state law is certainly correct. The phrase that we're talking about, authorized to do business in this state, has a very specific meaning in Wisconsin law as applied to Wisconsin insurers. So does Wisconsin not recognize that, let's say, a federally chartered corporation might be authorized to do business in Wisconsin? The phrase authorized to do business in the state, as applied to insurers, has a very specific meaning. It means in Wisconsin statutes. So of course we recognize that risk retention groups are generally authorized by federal law, but when that phrase is used in Wisconsin statutes, it means having a certificate of authority. It's a very specific defined phrase. Right. That's why I'm confused about your argument that this is just one sector, because I can't find that in any of the language of anything you're relying on. Can't find what? Well, you were earlier being dismissive about their concerns because you said, oh, this is just buildings. They can be risk retention groups for thousands of other sectors in Wisconsin. But if they're really not authorized to do business in Wisconsin, they're not authorized to do business in Wisconsin. Right. So those are two different questions, right? The law that we're talking about is a specific building contractor law. It says building contractors have to have an insurance policy from an insurer authorized to do business in the state. That phrase, when applied to an insurer, has a very specific meaning. It means an insurer that's licensed. And so the financial responsibility law, as applied to building contractors, means you need a licensed insurance policy. There are other ways that an insurance company that is chartered out of state can actually do business. Sure, right. Other than as, quote, authorized. Right. The law we're talking about doesn't allow them to do business at all. Could I ask you about the 2017 legislation? One more question. Yeah. As I look at this, it refers us to insurance statutes about surplus line insurers, which look to me as if they give the insurance commissioner quite a bit of discretion in perhaps imposing additional requirements on surplus line insurers. Right. Because it sounds to me like it's a pretty flexible category that reaches a lot of, as you say, racehorse or football player insurance or, you know, who knows. Right. Lottery insurance, hole-in-one insurance, and the like. But I guess I'm wondering how well defined we or the district court would find that regulation of surplus line insurers. So there is a lot of flexibility when it comes to a specific insurer that is applying to be a surplus lines insurer. But the second section, Section B, says that you simply have to be eligible. It doesn't actually have to say that you are authorized as a surplus lines insurer. So there's some basic eligibility requirements. Even more. And the basic ones are you just have to be domiciled somewhere, you just have to be authorized there, and some basic capital requirements. Those are Wisconsin's. As Judge Dillon in Indiana used to say, three rules for these kinds of cases, read the statute, read the statute, read the statute. Right. Okay. So, yeah, that's why we think they almost certainly qualify under some states basic eligibility surplus requirements, but we don't know because they have the information and we don't have access to it. I would ask this court not to certify the question to the Wisconsin Supreme Court because we think the state law interpretation question is fairly simple, and given the change in the law, Wisconsin has near zero interest in this case anymore. We think that they're authorized. I called them and offered to let them apply and be authorized, so it would be a huge waste of the state's time if we had to go back to the Supreme Court and litigate the meaning of state law. We think it's relatively straightforward. I want to make one final comment on the preemption claim. The fact that the law has changed significantly undermines the discrimination argument. So their theory previously was that the law was discriminatory because it only allows licensed insurers. Well, now it doesn't. Now it allows a policy from either a licensed insurer or any insurer eligible anywhere as a surplus lines insurer. So that's pretty broad. It's hard to argue that that discriminates against risk retention groups. So I would ask this court to either affirm or hold the case as moved. Thank you. Thank you. Your time ran out, Mr. Blair, but I'll give you an extra minute if you want to leave us with one thought. Thank you, Your Honor. I'll just address that final point. I think opposing counsel said that the new statute shows that it's not discriminatory, and I mentioned in my previous remarks I think it shows the exact opposite. He mentioned that we only have to show by the most lax state's standards that we would satisfy as surplus lines. Again, I think that undermines how discriminatory this is, that it would exclude all risk retention groups, but Wisconsin does trust other states, even the most lax state, to regulate surplus lines carriers. And, again, those are the exact same hoops that run contrary to the very purpose of Valora, which was to minimize non-domiciliary states' regulations. If there aren't any other questions. Do you want to address the mootness problem in light of what the state had to say? The mootness, again, I think it's not moot because we don't need to jump through those hoops. It's preempted by the Valora. So what hoops? And you need to say something about the exception, too, because, yes, the Valora is there, but the Valora also has the language of the exception, which might bring a hoop or two back into the question. Okay, so the hoops, Your Honor, if I could address Judge Hamilton's question first. The hoops, the Valora is very clear that the only powers reserved to non-domiciliary states, which is Wisconsin in this case, are enumerated in 3902A1A through I. And going through the process of showing that we would qualify as a surplus lines insurer in Alaska or Hawaii or whatever the most lax state is, that would be an extra hoop that is not required of anyone else under 101-654-2A2A. And the Valora specifically preempts all state laws that would directly or indirectly regulate risk retention groups, except if an exception applies. And this gets to Chief Judge Wood's question of the exception. So the Musser court analyzed the exception in 3905D without regard to the key cross-reference to 3902A4, which prohibits any discrimination against risk retention groups. And the new interpretation – Frankly, counsel, the court was paying pretty close attention to that exception. I understand you may disagree with it, but I'm surprised to hear you say it ignored the discrimination language. Well, it wasn't a disputed issue there, Your Honor. So we would say that that was dicta because it was not the product. It didn't have the benefit of the adversarial process. That issue was not debated. It was not in dispute. And in passing, the court adopted the language in Mears and went out of its way to address the issue that was not in dispute in the Musser case. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.